Good morning. May I please the Court? R. Ferrier for the Respondent. The Respondent is sitting in the courtroom. Well, the major paramount issue in this case is the credibility. And as the Petitioner argues in this case, immigration judge erred by finding adverse credibility in this case. And it's very simple. I would like to point out to the Court that Judge started his opinion from quoting, and I would quote, started his opinion, and I would quote, that documents like this one have been found to be completely fraudulent. It's an administrative record, page 39. That was the cornerstone of his decision. He started with that, stating that the documents my client submitted was fraudulent. The judge was referring to Exhibit 6, the affidavit presented by the presiding overseer in this case, stating that my client is a Jehovah's Witness. So that was the beginning. From that point on, Judge began just reciting a number of issues just to justify his adverse credibility findings. However, Judge again reiterated the same thing on a page, this time it's page, I believe, 41, stating again that the documents just like this were found to be completely fraudulent. The problem with this analysis is Judge never ever stated who found them to be fraudulent, who said those documents are fraudulent. Plus, the judge completely ignored the fact that two witnesses testified in this case that not only they know the person, the presiding overseer of the congregation, who made that affidavit, they testified that my client is a member of the congregation. Judge completely ignored that. Judge made six points citing why he made adverse credibility findings, and twice he mentioned that the documents were found to be completely fraudulent without any evidence at all. Wasn't the judge concerned that none of the witnesses were able to name the overseer of the Kingdom Hall? That's not exactly right, Your Honor. What I would like to point out is that he was concerned that they couldn't name exactly the name of the congregation. What's important in this case is that the judge didn't have any concern that none of the witnesses were able to give the overseer's name? I don't believe that, Your Honor. I believe they stated that they called different names the congregation. However, all of them stated that the congregation was located on the intersection of Chevy Chase and Adams, and the court is asked to take a judicial notice that the fact that address is on the intersection of Chevy Chase and Adams. Plus, the judge, as one of the points the judge makes, states that I don't believe this case because she'd just been baptized. In other words, the judge turns around and states she's a member right now, but there is no evidence that she was a member in Armenia. Well, the judge can bootstrap the argument and say that she's a member now. However, I believe the documents proving that she's a member are fraudulent. He completely ignored testimony of two witnesses who stated that she's a member. Another? Yes. Is it accurate that she didn't get her blood card and she wasn't baptized until just before this hearing? That's absolutely correct, Your Honor. However, two witnesses testified, and I pinpoint exactly to the pages in the record, that it takes significant time to become baptized member. They differentiated between baptized members and not baptized member. And that was one of the points that the judge made, stating that, well, she wasn't baptized member in 1996. However, it's exactly how it's supposed to go in that particular religion. You become a believer, then you become a publisher, and then after a while you become a baptized member. When do you get your blood card? When you pass all the tests. And the congregation decides whether the belief is sincere and whether the person is supposed to be baptized. And both of the witnesses, by the way, testified pages, let me just pinpoint to the page, yes, well, pages 83, 86, and 91, that it took them significant amount of time to be baptized. Witness number two stated it took him eight years to study. Witness number one stated on page 83 and 86 that it took him years to become a member. Apparently, that's a procedure in this church. And judge totally used that against the client, who actually testified that, yes, I was non-baptized member, and then I became baptized member. It takes time for these issues. However, there is another issue, another point the judge makes, arguing that my client is not credible. For example, the judge says, well, she was supposed to go through the refugee procedure overseas. She went to the consular official and never told them about the problems. Well, my client didn't tell the consular officer that she had problems. That's true. However, the law is very clear in this circuit. If a person lies to get into the United States to ask for asylum, that cannot be used against a person on asylum merits. Here, my client never lied. She just never mentioned that she had problems because, obviously, she wants to get a visa to get out of the country. However, the judge turns around and uses that against her, stating that she's not credible because of that, and she should have gone through the refugee proceedings. Judge completely speculated on a document beside the fact that all witnesses testified that that person who made it as a presiding overseer of the congregation completely made up some arguments based on the fact that she should have gone and told the consular official that, look, I have some problems. Let's do the refugee outside of the country than inside of the country. Those are not the factors that are supposed to be weighted against her credibility. And just the fact that he mentioned twice allegedly fraudulent documents, that indicates in itself that those are the paramount problems in this case in his mind. However, I would like to point to your attention that Respondent never ever argued that. Never ever in their brief they mentioned that the judge found the documents to be fraudulent. And the question is why they did that. And the answer is very simple, because they know that argument is loser, because they know the judge completely speculated. And another point in this case, that Arlene Dorfman, the attorney who was a trial attorney representing the government at the trial, and she also was a trial attorney at the BIA brief level, she said that they agree with the result but disagree with the reasoning. So the only reasoning is in this case by the judge that the Respondent is not credible. Even if the government says that they disagree the way the judge reasoned the credibility findings in this case, I don't understand why the government continues to argue that my client is not credible. We have to see whether or not there is substantial evidence in the record to support the adverse credibility determination. Would you agree that's what our charge is? Absolutely, Your Honor. And there is no substantial evidence to support the judge's decision. Okay. The fact that none of the witnesses could agree on the name of the kingdom hog, you don't think that's substantial evidence in support of the adverse credibility? I don't agree, Your Honor. And here is why. It all goes through the translation. And one person can name it in Armenian this way, and another person can name it the other way. The point is the translator is the filter that interprets the words. And in the record, interpreter actually states on a number of occasions, I don't know the word. I don't know the word. They couldn't explain what the presiding overseer is. They couldn't explain whether a person is in charge or just a servant or whatever is in that congregation. On a number of occasions, interpreter said, I don't know the word. So we don't really know whether the interpretation was right or not. The fact is they were using the service of interpreter. And that's why perhaps the confusion. However, all of them point out to one and one thing only. It's an intersection of Adams and Ceviches. They described there were four congregations attending that church, and there are Arabics, Armenians, and some others. And all of them perhaps called them different names. That's not important. What's important in this case is that there was no significant fact and no factor at all in testimony of the witnesses that they were not credible. It just laid down on the fact that the judge thought that the documents were fragile. That was the primary, perhaps primary and only reason for adverse credibility determination. However, they never argued that, and they know why they did. What about the evidence regarding the petitioner's husband's opposition to the religion? Yes, and that's He was always opposed to the religion, and then it changed to he was a Jehovah's Witness. Well, that statement was made in I-589, an application for asylum. And it has nothing it doesn't contradict the statements of the petitioner that now he's a member of Jehovah's Witnesses. There is no problem. The former Soviet Union is an atheistic country. They did not believe in God. And it's normal for the husband to say that I do not subscribe to that religion. However, after a number of years, and I presume it's about ten years, he became a member, or at least a non-baptized member. I'm not sure whether he's a member of non-baptized members. In her 1999 application, she said her husband always disagreed with her choice of religion. Then she said that he became an unbaptized Jehovah's Witness in 1998. That's a discrepancy. Are we talking about the statement in I-589, Your Honor? Yeah, the application said that her husband always disagreed. That's in AR-152. Okay. And then in her testimony, she said her husband became an unbaptized Jehovah's Witness in 1998. That's a discrepancy. Perhaps it is. But how is it relevant to her credibility if her membership is at issue at this point, not her husband's? I would like to reserve at least 30 seconds for rebuttal. Thank you. May it please the Court, my name is Earl Wilson on behalf of the government. If I can just start with the Court's last question about the application and the testimony concerning the petitioner's husband. That's important because part of the petitioner's claim that she makes before the immigration judge is that I have a well-founded fear of future persecution because not only have I been harassed, but my family have now been harassed. My husband has now fled the country and my children because they're Jehovah's Witnesses. Now, the problem with that is she has an application that's completely at odds with that. So the immigration judge is now faced with evidence that a claim is based on her harassment and her family's harassment, and there's a statement in the asylum application that says my husband is essentially a gangster, not a communist. And the important thing, Judge Rawlinson, is that the application was made in 1999 and the conversion occurred before that. So it's reasonable if, in fact, he was converted in 1998, that that would have been in the application. It was not. And that's a central part of her claim. The second point I want to go to is the fraudulent documents. When did she come to the United States? I'm trying to remember. I think it was in 1999. I'm not quite sure here. What I'm trying to decide is, have you helped me to decide? She arrived on September 29th, 1999. When her current knowledge of what her husband was doing. So they were together up to that point? I would assume so. And I would assume that when she makes the application, I mean, she didn't say that that's not the case. She makes the application in 1999. At that time, according to her testimony in court, her husband's already a Jehovah witness, but that's not what she says in the application. And I think that's a critical issue, and it's certainly central to her claim. The other point on the fraudulent document, Your Honor, and there's probably a reason for that, the Court says, explains why, what was wrong with the document. And it's not a major aspect of the claim. On the bottom of page 41, the Court says that the letters were presented were found to be fraudulent, but the Court notes that the respondent, of course, presented her letter just today, so that no investigation on the letters could have taken place. It's not a big deal, but, Your Honor, I want to just spend a minute explaining the whole sequence of this case. What happens is, this petitioner came before the INS, former INS, made her claim for asylum, and it was denied, presumably because they weren't satisfied with the issue of her past experience in being a Jehovah witness. She then goes before the immigration judge, and one of the first things the immigration judge says on the first days of the hearing, I think this was on 1299, he cautions her that, you know, there's some problems with fraudulent claims by Jehovah witness. So just bear in mind that, you know, I'm going to need as much corroborating evidence as possible. And she says, of course, you know, I think it was an act as a way of all this information. So she's well aware that there's a problem with the issue of identity and her past experience with being a Jehovah witness. The immigration judge focused primarily on the fact that, assuming that she can establish now that she's a Jehovah witness, here's the problem. She has no testimony to show that she's a Jehovah witness back in Armenia. And if you look at her asylum application, it says I was a member in 1996. And that was the word she used, I was a member. It says that she was exposed initially in 1992, but that she became a member. And not only just a member, she was preaching and continuing to do really significant information. She didn't say that I'm not, I just was a believer or I'm not, I'm just a preacher. She says I'm a member. Well, what is a member? Is it someone, can you be a member before you're baptized? I don't know the details of that, but I do know that she wasn't a member. How do you know that? Well, I'd assume that that's what she's saying now, that she was not a member. She became a member. In her words, in her, in the briefings, I was a non-member until I think it was, she was a non-member until I became a member. I believe it was March of 2001. That's when she was baptized. That's correct. So I'm asking, when you go out and we see them on the street preaching, they have to do a certain amount of that before they can be baptized. So what are they? Are they members or what are they during that period, interim period of time? I don't know, Your Honor, but I think what her testimony is in looking at the application. Your opposing counsel this morning has used the terms non-baptized member and baptized member. Is the error in the application here, the failure to add the adjective in front of member? Well, I think, Your Honor, if you look at it, I don't see any of that. I mean, I look, taking it on its face value, it doesn't make a differentiation that's made in court before the immigration judge. And I think if you look at the application on page 148, it says that she became a Jehovah Witness member in 1992. And I think that she then goes on to talk about the problems that she has. But there's a sense in reading this that she's a member. That's all I can tell you. And I think that her statement now that she was not a member, she was a non-baptized member, perhaps that's a reasonable interpretation in her view. But I think the immigration judge was well within his discretion to find that, you know, that's not what she said here. And when you look at the fact in terms of the sequence here, the fact that the immigration judge is on notice, places her on notice, and then shortly after, or just before the hearing, she goes out and becomes a member. And she presents all of the evidence. A baptized member. And all of her testimony and witness concerns her subsequent membership. And the one individual who can testify allegedly that she is, she even practiced it in Armenia, her aunt, doesn't show up. And that's on the heels of the immigration judge telling her, perhaps a year earlier than that, I'm concerned, that's what the State Department's reports say, that there are problems with these fraudulent claims. And she never says to the immigration judge, you know what, I'm having a problem with my aunt. She's disavowed me and I'm going to have a problem with this. But that's what she says at her hearing, but for a year before that, the judge is telling her that I'm concerned about your membership in Armenia. She doesn't tell the judge, you know, I'm having a problem with my aunt, she's not going to come. She doesn't then go out and try to get anyone to bolster the evidence that she's a Jehovah witness in Armenia. So the judge is now, and as you read the decision, the judge is saying, listen, I don't see any evidence here of you being a member in Armenia. The one person that could do that's not here. And essentially, I told you that a year ago. You present no evidence to me. And the document in question says that you were a member in 1992, or the latest, 1996. And I just find, essentially, your testimony is credible. Now, I understand what the petitioner is saying, that, you know, perhaps, you know, her version of it, the nonmember believer, but that's not what she said in her application. And the question is, when the judge finds her incredible, based on her document that's in the record, is that finding supported by substantial evidence? Or can you compel a contrary finding based on the evidence that she's got in this record here, and is that sufficient to overturn the IJ's decision? I submit that it's not. When he says, I got this letter and the proof of the blood card just now at this last hearing, so I don't believe him, did he have an obligation to continue it and get somebody to verify? No, Your Honor. It's a petitioner's burden, as you can tell from this case. But she brought in two people from the congregation. She brought in the letter. She brought in the blood card. Is that to be disbelieved? Because, apparently, there may have been some trouble with some fraudulent claims. Your Honor, even put aside the fraudulent claim, the issue is, her claim is that I was a Jehovah witness in Armenia. There's nothing to dispute that, is there? But there's nothing to establish that. Well, her testimony, she said that I was, and I was detained, and then the Lord let me go. That's her testimony, but if you look at her asylum application, and that's the problem. Her testimony is at odds with her asylum application. In what respect is the asylum application different in that respect? It said that she became a Jehovah witness in 1992, and she then bolsters that with a document that, at the last minute, that appears fraudulent, and in addition to that, her husband in this asylum application is essentially against her, when in fact she now testifies that he became a nonmember, I would presume, in 1998. If you look at all of the evidence in this record, and if you look at the whole sequence of what happened, she goes before the asylum officer, it's denied. She then goes before the IJ. He questions the fact that they're fraudulent, and that she's a Jehovah witness. She says that I'm going to bring my aunt in, and never does, and comes at the last minute. I think if you take all of that into consideration. Did she say she would bring her aunt in, or did the IJ say she should? Well, the IJ said she should, because the IJ was concerned. I'm sorry, I misspoke there. The IJ said she should, because the IJ was justifiably concerned about fraudulent claims from Armenians claiming to be Jehovah witness. But what's interesting in this case, he didn't spring it on her at the last minute. He asked her at the very beginning, and he put her on notice. And what you have here is a complete failure to go forward with that, and evidence supporting that she's a member after, assuming that you take the blood card and face value, and it demonstrates that she became a member in 2001. That doesn't answer the question. But what it does more than anything else, it creates this inconsistency between her testimony, the record, the documents, and I think that there is ample evidence to support the finding in this particular case. Let's assume for the moment that she was not a member in Armenia. The fact that she is when she gets to the United States, does that entitle her to asylum? Well, she would have to demonstrate that she has a well-founded fear of future persecution in Armenia. And I don't think there's any evidence. If, in fact, let's say she is a bona fide Jehovah's Witness now, all the country reports and so forth say they are very mistreated in Armenia. I don't think so, Your Honor. I think that there are some problems with Jehovah's Witness. But again, the alien would have to make an individualized showing. I don't think that it's enough to say that all Armenians who are Jehovah's Witnesses that convert now can demonstrate a well-founded fear of future persecution. I don't think that's the way the law works. You have to make the individualized showing, and there was none in this particular case. But again, what's also interesting is that her claim must be taken into context with her husband's claim, which, again, you don't know what to believe. Her husband is allegedly left because of problems she's having, and she's saying that he's against him. The problem with this case is the record is just... That might go to her credibility, but does it go to credibility on this core issue? On the core issue of what? On the core issue, what does it matter what happens to her husband? She's applying for herself. Well, it gets to the well-founded fear of future persecution. If her argument is that my husband had to leave because he's a Jehovah's Witness, maybe the reason that her husband left has nothing to do with the fact that she's a Jehovah's Witness. I mean, that's the point here. She's trying to bolster the claim that he's a Jehovah's Witness and presumably all Jehovah's Witnesses are being persecuted and see he has to leave. Well, the fact is he's not a Jehovah's Witness and he's left. Maybe the family is leaving for other reasons, and that's why that's a core issue. That's why that's important, because even if you accept her testimony as being credible, she has to meet the well-founded fear. And on that issue, she is all over the place. But certainly the fact that her husband was or is a Jehovah's Witness is just all over the place on the record. All right. Thank you, counsel. Thank you very much, Ellen. We'll give you one minute for rebuttal. Very quick. There is a pattern and practice of persecution of Jehovah's Witnesses in Armenia. The State Department report establishes that. So even if we go back and say nothing happened before the court and now she's a Witness and she goes back, there is a well-founded fear because of the pattern and practice. However, the judge never discussed that. The judge just ignored it. Stopped on the credibility. Did the country report say pattern and practice or some instances? No. Did she use the term pattern and practice? No. The country report doesn't use that term. However, there are a number of evidence of that. Additionally, regarding the aunt, she testified. She said, my aunt disapproved my religion and therefore I cannot bring her in and I'm not connected with her anymore. The opposing counsel made the point that when the immigration judge a year earlier said, if your aunt's here, she needs to come to bolster your claim. His point is, why didn't she say at that time, my aunt is against me and she won't be here? Well, when the judge makes a point at the master hearing, client many times doesn't have opportunity to respond. It's just attorney-judge communication. Judge says, well, I would like to see the aunt. I would like to see this and that. There is no time there to argue aunt is good with me or not. And finally, there is another point of baptized, non-baptized members. She testified that there are members that are baptized and non-baptized. Two affidavits submitted in February of that year stated that she was non-baptized member. And then at the time of the marriage hearing, she was baptized member. But opposing counsel made the point that the unbaptized and baptized was not included in the application. It was just an assertion that she was a member. There was no distinction made. That's correct. And we have to agree, Your Honor, that there is a lot of unscrupulous preparers of the asylum applications, and this is minor inconsistency. The application was not in her native language, although perhaps it was translated to her. We know there's a lot of inconsistency in asylum applications. We can't just say because it wasn't said non-baptized for that particular word, she's not credible per se. I would submit on that. All right. Thank you. Thank you very much. Thank you to both counsel. The case argued is submitted for decision by the court. And the final case on calendar for argument is Nirvani v. Ashcroft. Thank you, counsel.
judges: Fletcher Hansen, Rawlinson